UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


ROBERT H. LANE,                )
Plaintiff                      )
                               )
                     v.        ) C.A. NO. 08-CV-30158-MAP
                               )
JOHN E. POTTER,                )
POSTMASTER GENERAL,            )
UNITED STATES POSTAL SERVICE,  )
Defendant                      )


MEMORANDUM AND ORDER REGARDING DEFENDANT'S
MOTION TO DISMISS OR FOR SUMMARY JUDGMENT
(Dkt. No. 14)

March 30, 2010

PONSOR, D.J.

## I.   INTRODUCTION.

Plaintiff, Robert H. Lane, an employee of the United States Postal Service ("USPS") and a veteran of the United States Army, filed suit alleging discrimination on the basis of age, gender, and disability, citing the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. (the "ADEA"), the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 et seq. (the "Rehabilitation Act"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title

VII"). Defendant has moved to Dismiss or for Summary
Judgment (Dkt. No. 14), and Plaintiff has opposed.  The
court heard argument on February 16, 2010.  On March 3,
2010, the court issued a <u>brevis</u> ruling, allowing the motion
in the face of an imminent pretrial conference and trial,
with the promise that a memorandum would follow detailing
the court's reasoning.  This is that memorandum.

## II.   BACKGROUND.

Plaintiff has worked for the USPS since 1975.  In
January 2007, he was working as an Internal Control Analyst.
The Internal Control Group was part of the Finance
Department, which was headquartered in North Reading,
Massachusetts.

On February 6, 2007, the USPS announced that, as part
of a national reorganization, it was reducing the number of
finance positions and creating a centralized finance group
in North Reading, with only one position to remain in
Springfield.  The USPS then announced various reduction-in-
force ("RIF") "avoidance strategies."  These, according to
Defendant, were intended to minimize the number of workers
who would be laid off as a result of the RIF.  (Dkt. No. 16,

Def.'s Mem. in Supp. 3.)

The RIF avoidance strategies included posting available jobs for individuals who would be affected by an upcoming RIF.  Id.  On February 13, 2007, two finance jobs were posted in Springfield: an analyst position and a purchasing position.  Plaintiff (then 56 years old) did not apply for the purchasing position.  He did apply for the analyst position, but it was awarded to Patricia Clayton, who was then 53 years old.  Defendant asserts that the job was awarded to Clayton because of her superior performance on two numerically scored tests.  Plaintiff alleges that the test scores were pretextual and that the USPS in fact awarded the job to Clayton because she is a woman and because she was not coming up on retirement.

On March 16, 2007, the USPS posted four additional finance jobs.  "Control and Support" jobs were posted in Boston and Reading, and in the New Hampshire/Vermont District, and a purchasing job was posted in Hartford, Connecticut.  Plaintiff did not apply for any of the positions.

Instead, in April 2007, Plaintiff requested a

3

reasonable accommodation permitting him to continue to work in Springfield.  Plaintiff had been rated by the Department of Veterans as having a 40% disability as a result of chronic instability in his knee.  In his request for an accommodation, he explained that this condition prevented his commuting from Springfield to North Reading, where the financial positions would be located.  He submitted a doctor's letter confirming that the long commute would aggravate his condition.

On July 11, 2007, the Massachusetts District Reasonable Accommodation Committee ("DRAC") interviewed Plaintiff, who explained that although he was able to engage in many daily activities and even played golf and ice hockey (albeit with a brace), long-distance drives bothered his knee.  Plaintiff explained that he could not drive the 200-mile round trip from Springfield to Reading every day without negative consequences.  On July 30, 2007, the DRAC denied the request for an accommodation.

On September 19, 2007, Plaintiff was notified that he had been re-assigned to the North Reading position, effective November 24, 2007.  On or about December 7, 2007,

4

he appealed his reassignment to the Merit System Protection
Board ("MSPB").   However, he subsequently withdrew the
appeal, conceding that the Board lacked jurisdiction because
he had not suffered a reduction in pay or grade.   In
December 2007, he took leave until his retirement.   On
December 17, 2007, he contacted an EEO counselor, claiming
sex, age, and disability discrimination.   On March 24, 2008,
he filed his complaint with the Equal Employment Opportunity
Commission ("EEOC"), and on July 8, 2008, the EEOC issued a
Final Agency Decision finding no discrimination.

On August 7, 2008, Plaintiff filed this lawsuit,
alleging discrimination as follows:

- Count 1: Gender, in violation of Title VII;

- Counts 2 and 3: Age, in violation of the ADEA;

- Counts 4 and 6: Disability, in violation of the
  Rehabilitation Act; and

- Count 5: Disability, in violation of Title VII.

(Dkt. No. 1.)   On January 13, 2010, Defendant filed this
Motion to Dismiss or for Summary Judgment.   (Dkt. No. 14.)

### III.  DISCUSSION

Defendant argues that the complaint should be dismissed
in its entirety because Plaintiff did not properly exhaust

administrative remedies.  In the alternative, Defendant
argues that he is entitled to summary judgment because, with
respect to the Title VII and ADEA claims (Counts 1-3),
Plaintiff cannot point to evidence of age or gender
discrimination in the record to rebut the USPS's proffered
legitimate, non-discriminatory reason for Plaintiff's
transfer.  With respect to the disability claims (Counts
4-6), Defendant contends that Plaintiff has failed to
demonstrate either that he is disabled within the meaning of
the Rehabilitation Act or that the denial of the requested
accommodation would have violated the Act if he were
disabled.  As to Count 5 the complaint fails to state a
claim for the straightforward reason that Title VII does not
provide a remedy for discrimination based on disability.

Plaintiff's complaint and memorandum make references to
the USPS's alleged violations of the Veterans Preference Act
of 1944, Pub. L. No. 78-359, 58 Stat. 390 (codified as
amended in scattered sections of 5 U.S.C.).  These
allegations are not separately captioned, but Plaintiff's
submissions seem to imply that Plaintiff is aggrieved by the
denial of a preference to which he believes he was entitled.

Defendant responds that, to the extent Plaintiff seeks relief under the Veterans Preference Act, he is barred from seeking redress except in accordance with the procedural requirements of 5 U.S.C. §§ 3330a and 3330b, which he has not observed.  In any event, claims under the Veterans Preference Act are irrelevant, at least on the facts of record in this case, to the discrimination claims before the court.

A.  <u>Procedural Issues</u>

Defendant argues that Plaintiff's ADEA claims (Counts 2 and 3) should be dismissed because he failed to provide the USPS with a required notice of intent to sue as required. However, the cited notice requirement applies only where a complaining employee bypasses the EEO process.  <u>See</u> 29 U.S.C. § 633a(d).  Plaintiff included the age-discrimination claims in his EEOC complaint.  The thirty-day notice requirement therefore does not apply, and Plaintiff's ADEA claims are not barred.

Defendant further contends that Plaintiff's Title VII and Rehabilitation Act claims (Counts 1, 2, 5, and 6) should be dismissed because Plaintiff missed the 45-day filing

deadline for contacting an Equal Employment Opportunity ("EEO") counselor.  The timeliness requirements are contained in 42 U.S.C. §§ 2000e-5(f)(1) and 2000e-16(d) and 29 U.S.C. § 794a, and a federal agency may generally assert plaintiff's lack of timeliness as a defense to a subsequent civil action.  However, if the defendant agency decides the merits of an EEO complaint without addressing the question of timeliness, the agency may be precluded from raising the issue in a subsequent civil action.  <u>See</u> <u>Smith v. Danzig</u>, No. 00-216, 2001 WL 823642, at *10-11 (D. Me. 2001) (citing <u>Ester v. Principi</u>, 250 F.3d 1068, 1071-72 (7th Cir. 2001)).

Defendant maintains that it may argue timeliness because the USPS, having noted in its FAD that Plaintiff's December consultation was untimely with respect to most of the contested employment actions, successfully preserved the defense.  (Dkt. No. 17, Ex. 14, Final Agency Decision 11-12.)  The argument has some strength.  However, the FAD does not address the timeliness of Plaintiff's consultation with respect to any events occurring after June 2007, including his reassignment to North Reading.  It is therefore not entirely clear that the USPS preserved

8

Defendant's timeliness defense with respect to claims
arising from his reassignment.

Because summary judgment will be granted on other
grounds, the court will not address this issue or make any
determination as to the proper scope of Defendant's
timeliness argument.

B.   Age and Gender Discrimination under Title VII and
     the ADEA (Counts 1-3)

Title VII prohibits discrimination on the basis of
gender.  42 U.S.C. § 2000e-2(a).  The ADEA prohibits age-
based discrimination by employers against employees 40 years
of age or older.  29 U.S.C. §§ 623(a) and 631(a).  The
familiar Title VII McDonnel-Douglas burden-shifting
framework applies to both types of claims.  See McDonnell
Douglas Corp. v. Green, 411 U.S. 792, 802-3 (1973)
(establishing burden-shifting framework where Title VII
plaintiff brings case based on circumstantial evidence), and
Arroyo-Audifred v. Verizon Wireless, Inc., 527 F.3d 215,
218-19 (1st Cir. 2008) (applying McDonnell Douglas framework
to ADEA claims and citing Vega v. Kodak Caribbean, Ltd., 3
F.3d 476, 478 (1st Cir. 1993)).

In the first stage of the McDonnell Douglas framework,

a plaintiff must establish a <u>prima</u> <u>facie</u> case of employment discrimination.  The burden then shifts to the employer, who must "articulate a legitimate, non-discriminatory reason" for its actions.  If the employer articulates such a reason, the burden at the third stage returns to the plaintiff, who must proffer "sufficient admissible evidence, if believed, to prove by a preponderance of the evidence" that the defendant's stated reason is pretextual.  <u>Velazquez-Fernandez v. NCE Foods, Inc.</u>, 476 F.3d 6, 11 (1st Cir. 2007) (quoting <u>Woodman v. Haemonetics Corp.</u>, 51 F.3d 1087, 1092 (1st Cir. 1995)).

The plaintiff's burden at the first stage is not onerous, and Defendant does not dispute that Plaintiff has made out a <u>prima</u> <u>facie</u> case for both age and gender discrimination.  However, Defendant argues that neither the selection of Clayton for the Springfield position nor Plaintiff's resulting assignment to North Reading was the result of age or gender discrimination.  As its legitimate, non-discriminatory reason, Defendant points to evidence that Clayton was selected as a result of her superior performance on a written examination and in an interview.  (Dkt. No. 16,

Ex. 1, Decl. of Ann Wood ¶ 8.)  Plaintiff offers no evidence to demonstrate that this explanation is in fact a smokescreen for discrimination.  Indeed, Plaintiff offers no evidence of discrimination of any kind.  Thus, Defendant is entitled to summary judgment on these claims.

      C.   <u>Disability Discrimination under Title VII (Count 5)</u>

In Count 5, Plaintiff alleges disability discrimination under Title VII.  Title VII does not prohibit discrimination on the basis of disability.  <u>See</u> 42 U.S.C. § 2000e-2(a). The court will therefore allow Defendant's Motion to Dismiss with respect to Count 5 on the ground that it fails to state a claim on which relief can be granted.

      D.   <u>Disability Discrimination in Violation of the Rehabilitation Act (Counts 4 and 6)</u>

Defendant argues that the denial of Plaintiff's request for a reasonable accommodation does not violate the Rehabilitation Act because (1) Plaintiff was not a disabled individual within the meaning of the Act and (2) even if he were a disabled individual, Plaintiff would not be entitled to the accommodation he requested.  Defendant's argument is entirely convincing.

11

An impairment constitutes a disability under the Rehabilitation Act, if the impairment "substantially limits" a "major life acitivit[y]." 29 C.F.R. § 1630.2(g)(1). The same standard applies to claims under the Rehabilitation Act and the Americans with Disabilities Act ("ADA"). 29 U.S.C. § 791(g). Because of this overlap, case law interpreting the ADA applies to parallel provisions of the Rehabilitation Act. See Rolland v. Potter, 492 F.3d 45, 47-48 (1st Cir. 2007) (citing Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 20 (1st Cir. 2004)).

It is well established that an individual's status as a disabled veteran does not guarantee a finding that the individual is "disabled" for purposes of prosecuting a claim under the ADA. See Interpretive Guidance on Title I of the Americans with Disabilities Act, 56 Fed. Reg. 35,742 (July 26, 1991) (codified at 29 C.F.R. Part 1630, App.).[1]

---

[1] The relevant portion reads as follows: "The fact that an individual has a record of being a disabled veteran, or of disability retirement, or is classified as disabled for other purposes does not guarantee that the individual will satisfy the definition of 'disability' under part 1630. Other statutes, regulations and programs may have a definition of 'disability' that is not the same as the definition set forth in the ADA and contained in part 1630. Accordingly, in order for an individual who has been

To qualify as a disability under this statute, the impairment at issue must be severe enough that it "prevents or severely restricts" a major life activity.  <u>Toyota Motor Mfr., Kentucky, Inc. v. Williams</u>, 534 U.S. 184, 198 (2002) (abrogated by statute effective January 1, 2009); <u>Roland v. Potter</u>, 492 F.3d at 47-48.[2]  Plaintiff's sole limitations are climbing ladders and driving long distances.  While some courts have found that driving may constitute a major life activity, Plaintiff's level of restriction in this area does not qualify as "severe."  He is able to drive short distances daily and long distances on occasion.  Plaintiff cites no authority, and the court is aware of none, holding this level of impairment sufficient to constitute a disability under the <u>Toyota</u> standard.

---

classified in a record as 'disabled' for some other purpose to be considered disabled for purposes of part 1630, the impairment indicated in the record must be a physical or mental impairment that substantially limits one or more of the individual's major life activities."

   [2] The definition of "disability" under the ADA has been expanded by statute to encompass less severe impairments. However, the expansion does not apply to conduct occurring before the statute's January 1, 2009 effective date.  The ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 355, § 8 (codified as amended in scattered sections of 42 U.S.C. and in 29 U.S.C. § 705).

Moreover, even if Plaintiff were disabled, immunity from any job transfer would not constitute a reasonable accommodation of the disability as a matter of law.  The First Circuit directly addressed this point in <u>Kvorjak v. Maine</u>, 259 F.3d 48, 53 (1st Cir. 2001), holding that an employer's "decision to reject an accommodation based on [the employee's] commute does not demonstrate a disregard for its obligations under the ADA."

Finally, even if some accommodation <u>were</u> called for to address Plaintiff's knee problem and his difficulty in driving long distances, an employee is not necessarily entitled to his or her preferred accommodation.  The USPS offered Plaintiff relocation benefits that would have enabled him to live within a drivable distance of his new work site.  Plaintiff has not argued that the proposed accommodation would have left him unable to perform his job, and he has cited no authority suggesting entitlement to an alternative accommodation.  Thus, the court will find that, to the extent the USPS was obliged to reasonably accommodate Plaintiff's limitations as a driver, it did so by offering him relocation benefits.

E.   <u>The Veterans Preference</u>

Finally, the court will address the Veterans Preference arguments, which are not pled as a separate count but which, as noted above, appear at various places in Plaintiff's papers.  Essentially, Plaintiff alleges that he was denied a preference to which he was entitled under the Veterans Preference Act.

As a threshold matter, this court has no jurisdiction over the issue.  In general, a veteran facing adverse personal action in violation of the Veterans Preference Act must appeal the action to the MSPB.  5 U.S.C. § 3330a(d)(1).[3]  A veteran may challenge the adverse personnel action in federal district court only if he first terminates the appeal to the MSPB and then files in the appropriate district court within 60 days of such termination.  5 U.S.C. § 3330b(a).  Plaintiff withdrew his appeal to the MSPB on December 17, 2007 (Dkt. No. 16, Ex. 14 at 6-7), and this action was not filed until August 2008, almost eight months later.  This court therefore lacks jurisdiction to address

---

[3] The MSPB's decision may be challenged only in the United States Court of Appeals for the Federal Circuit.  5 U.S.C. § 7703(b)(1).

15

any alleged violation of the Veterans Preference Act.

Plaintiff does not directly argue that this court has authority to remedy the USPS's alleged denial of a preference.  Rather, his theory seems to be that the court should consider the denial of the preference as evidence of the USPS's discriminatory intent.  At oral argument counsel suggested that, because the USPS misrepresented Plaintiff's retention register to Plaintiff, he did not become aware of his "bumping rights," which he could have used to replace Clayton in the Springfield position.  Plaintiff argues that the USPS failed to inform Plaintiff of his bumping rights intentionally, as an expression of discriminatory animus against Plaintiff.  No evidence, however, appears on the record to support this theory.  Since any claim along these lines is purely conjectural and was not properly pled, it can offer no defense to Defendant's motion for summary judgment.

## IV.  CONCLUSION

Based on the foregoing, the court on March 3, 2010 allowed Defendant's motion to dismiss or for summary judgment (Dkt. No. 14).  The clerk will now enter judgment

16

for Defendant.   This case may be closed.

    It is So Ordered.


                            <u>/s/ Michael A. Ponsor</u>
                            MICHAEL A. PONSOR
                            U.S. District Judge